# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL S. BANKUTHY, | CV F 05-00696 AWI DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| MR. HICKMAN, Secretary, | [Doc. 1] |
| Respondent. / | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

## PROCEDURAL HISTORY[2]

Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a conviction in the Los Angeles County Superior Court on March 27, 2002, for corporal injury in violation of California Penal Code section 273.5(a), with an enhancement for inflicting great bodily injury during the commitment of a domestic violence felony, in violation of California Penal Code section 12022.7(e). (Exhibit 1, Abstract of Judgment, Answer.) Petitioner was sentenced to a seven-year prison term. (Id.)

---

[1] Respondent submits that effective July 1, 2005, the Youth and Adult Correctional Agency and the departments and boards within it became the California Department of Corrections and Rehabilitation. Thus, Mr. Hickman, as the Secretary, is the proper Respondent. Fed. R. Civ. P. 25(d); see Cal. Penal Code §§ 5050, 5054, 5055; see also Cal. Gov. Code §§ 12838, 12838.5, 12838.7.

[2] This information is derived from the petition for writ of habeas corpus and Respondent's answer to the petition.

1

1    On or about August 2004, Petitioner filed an administrative appeal purporting to submit a
2 California Penal Code section 2934 waiver and seeking to obtain day-for-day credits based on his
3 participation in the Inmate Work Training Incentive Program (IWTIP).  Petitioner claimed that
4 the denial of these credits was an equal protection violation.  (Petition, Exhibit B, Inmate
5 Appeal.)  Petitioner's appeal was denied.  (Petition, Exhibit B.)

6    Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior
7 Court, which was summarily denied on February 2, 2005.  (Petition, Exhibit E.)

8    On March 3, 2005, Petitioner filed a state habeas corpus petition in the California Court
9 of Appeal's Second Appellate District raising the same claims asserted in the instant federal
10 petition.  The petition was denied on March 17, 2005.  (Petition, Exhibit E.)

11    In the meantime, on January 31, 2005, prior to receiving a response from the superior
12 court, and before filing in the appellate court, Petitioner filed a state habeas corpus petition in the
13 California Supreme Court, which was summarily denied on March 16, 2005.  (Petition, Exhibit
14 E.)

15    Petitioner filed the instant federal petition for writ of habeas corpus on May 16, 2005, in
16 the United States District Court for the Central District of California.  The petition was
17 transferred to the this Court on June 1, 2005.  (Court Doc. 1.)

18    Respondent filed an answer to the petition on November 2, 2005, and Petitioner filed a
19 traverse on November 30, 2005.  (Court Docs. 7, 8.)

20    On August 30, 2006, Petitioner filed a request for judicial notice.  (Court Doc. 11.)  On
21 September 13, 2006, the Court construed Petitioner's request for judicial notice as a supplement
22 to his traverse.  (Court Doc. 12.)

23                             DISCUSSION
24 A.    Jurisdiction
25    Relief by way of a petition for writ of habeas corpus extends to a person in custody
26 pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws
27 or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,
28 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered

violations of his rights as guaranteed by the U.S. Constitution. Petitioner challenges his classification at Pleasant Valley State Prison in Coalinga, California, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.    Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

1    While habeas corpus relief is an important instrument to assure that individuals are
2 constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392
3 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a
4 criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v.
5 Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's
6 factual determinations must be presumed correct, and the federal court must accept all factual
7 findings made by the state court unless the petitioner can rebut "the presumption of correctness
8 by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115
9 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,
10 110 F.3d 1380, 1388 (9th Cir. 1997).

11    The court looks to the last reasoned state court decision as to the basis for the state court
12 judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501
13 U.S. 797, 803-04 (1991)). Where, as here, the state court reaches a decision on the merits but
14 provides no reasoning to support its conclusion, a federal habeas court independently reviews the
15 record to determine whether habeas corpus relief is available under section 2254(d). Delgado v.
16 Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

17    Although Petitioner is not challenging the validity of his conviction, section 2254 is
18 nonetheless the exclusive vehicle for a state prisoner in custody pursuant to a state court
19 conviction to challenge, as here, the execution of his sentence. White v. Lambert, 370 F.3d 1002,
20 1009-1010 (9th Cir. 2004).

21 C.    Equal Protection

22    Petitioner contends his equal protection rights have been violated because CDCR
23 arbitrarily and automatically gives some violent and serious felons the waiver and half-time
24 credits, while refusing to give it to others. Petitioner contends that he has participated in the
25 IWTIP, however, CDCR has refused to give him the worktime credits he has already earned
26 under the program.

27    The Supreme Court has held that the equal protection clause means "that no State shall
28 deny to any person within its jurisdiction the equal protection of the laws, which is essentially a

4

direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985); Clark v. California, 123 F.3d 1267, 1270 (9th Cir. 1997). The first step in any equal protection analysis is to identify petitioner's classification or group. Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995). Petitioner must show that the law has been applied in a discriminatory manner on him or imposes different burdens on different groups. Id.; Christy v. Hodel, 857 F.2d 1324, 1331 (9th Cir. 1988). The second step requires the Court to determine the level of scrutiny with which the Court should review the statute. Freeman, 68 F.3d at 1187. Discrimination on the basis of race or national origin and discrimination that affects fundamental rights are subject to strict scrutiny. Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914 (1988). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. City of Cleburne v. Cleburne Living Center, 473 at 440. A heightened standard of review is applied only "when a statute classifies by race, alienage, or national origin" or infringes on fundamental rights guaranteed by the Constitution. Id.

By contrast, classifications that do not involve a suspect class or fundamental right are subject to the rational relationship test and accorded a strong presumption of validity. Heller v. Doe by Doe, 509 U.S. 312, 319 (1993). Rational basis review "is not a licence for courts to judge the wisdom, fairness, or logic of legislative choices." Id. (citations omitted). The classification must be upheld if there is any "reasonably conceivable state of facts that could provide a rational basis for the classification." Id. (citations omitted). The burden is on the "one attacking the legislative arrangement to negate every conceivable basis which might support it." Id. (citations omitted). As Petitioner's classification involves neither a suspect class nor a fundamental right, it is subject to the rational basis test.

The California Legislature has mandated that the CDCR require every able-bodied prisoner to work "as many hours of faithful labor in each day and every day during his or her term of imprisonment" as provided in the Department's rules and regulations. Cal. Penal Code § 2700; Cal. Code Regs. tit. 15, § 3040, subd. (a). Work-time credits are a privilege not a right.

Cal. Penal Code § 2933. "Eligibility to earn [these] credits is determined by the type of crime committed and the specific date on which the commitment offense occurred." CDCR Dept. Operations Manuel § 53130.4.

Under California Penal Code section 2933, inmates may earn day-for-day credits for full-time performance in a qualifying work, training or education program. However, under California Penal Code section 2933.1, "notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credits, as defined in section 2933." Voluntary manslaughter is listed in that section. Cal. Penal Code § 667.5(c)(1). Because Petitioner was convicted of voluntary manslaughter, he may not reduce his sentence by more than fifteen percent. Cal. Penal Code § 2933.1; see also Respondent's Exhibit C, ¶ 10.

Despite Petitioner's adamant contention to the contrary, Petitioner is not entitled to a waiver under California Penal Code § 2934. Under section 2934, an inmate who committed a felony before 1983 can waive his or her right to automatically receive good behavior credits under Penal Code section 2931, which are capped at one-third, and instead earn half-time credits under Penal Code section 2933 by participating in approved programs. In re Strick, 148 Cal.App.3d 906, 910 (1983). Because Petitioner committed his offense in 2002, he is statutorily ineligible for the waiver.

Petitioner is unable to establish a violation of equal protection based on the above statutory scheme. Although Petitioner argues that he is forced to work and should earn day-for-day credits accordingly, the statutory scheme serves numerous interests and advances legitimate goals. Inmates are required to work so that they will develop job skills and a work ethic, thereby improving their chances for reintegration into society. People v. Goodloe, 37 Cal.App.4th 485, 488 (1995). Further, as Respondent notes, idle inmates can lead to trouble in the prison setting.

Moreover, the manifest purpose of California Penal Code section 2933.1 is to limit conduct credits for violent felons. As the California courts have explained, "[s]ection 2933.1 . . . is an expression of the Legislature's desire to delay the parole of violent felons . . . and is intended to identify 'violent felonies' and to single them out for special consideration 'when

6

1  imposing a sentence to display society's condemnation for these extraordinary crimes against the
2  person." People v. Ramos, 50 Cal.App.4th 810, 816 (1996).  This credit limitation is therefore
3  intended to protect the public from dangerous offenders who might otherwise be released on
4  parole on an earlier date. People v. Van Buren, 93 Cal.App.4th 875, 880 (2001) (citations
5  omitted), *disapproved on other grounds in* People v. Mosby, 33 Cal.4th 353, 365 n.3 (2004).
6  "By limiting custody credits for defendants convicted of violent felonies, section 2933.1
7  complements the purpose of the Three Strikes law to ensure longer prison sentences for those
8  who commit serious or violent felonies." Id. (citations omitted).

9       Based on the foregoing, the California statutory scheme serves to advance the legitimate
10 goals of public safety and therefore does not violate the Equal Protection Clause. See e.g.
11 McQueary v. Blodgett, 924 F.2d 829, 834-835 (9th Cir. 1991) (finding no denial of equal
12 protection in having persons sentenced under one system for crimes committed before July 1,
13 1984 and another class of prisoners sentenced under a different system).

14      Petitioner's claim that the two groups of persons, i.e. prisoners who are not eligible for
15 day-for-day credits are still receiving them, and prisoners who are also not eligible for day-for-
16 day credits that are working under the IWTIP but are not being given the credits, is a violation of
17 his equal protection rights, is without merit.  In support of his claim that similarly situated
18 prisoners are being treated differently, Petitioner submits five Legal Status Summaries (LSS) and
19 one Time Credit Waiver form (Penal Code section 2934); however, these documents simply do
20 not support or establish that these unidentified inmates are similarly situated to Petitioner.  (See
21 Petition, Exhibit A.)

22      As Respondent submits, with respect to the waiver form, inmate McDonald, (C-24488)
23 was apparently convicted before 1983, and, therefore, unlike Petitioner, was eligible for a Penal
24 Code section 2934 waiver.  The first inmate's controlling case is Penal Code section 245,
25 subdivision (a)(1), assault with force likely to cause great bodily injury, which is not a violent
26 offense under Penal Code section 2933.1 as it is not listed in Penal Code section 667.5,
27 subdivision (c). (Respondent's Exhibit 2, Declaration of Pam Webster, at ¶ 13.)  As such, this
28 inmate's classification credit code is a "1" and he is currently eligible to earn up to one-half

1. credit under Penal Code section 2933. The second inmate's controlling case was Penal Code
2. section 32, accessory to a felony. Again, this is not a violent felony, and this inmate's credit
3. earning capacity is not limited by Penal Code section 2933.1 on his controlling offense. (Id.)
4. However, the second inmate was limited to fifteen percent on two of the offenses listed as non-
5. controlling, Penal Code section 245, subdivision (a)(2), assault with a firearm, and Penal Code
6. section 12022.5, subdivision (a), the firearm enhancement, because these two crimes are listed in
7. Penal Code section 667.5, subdivision (c). (Id.)  The third inmate's controlling case, is a
8. conviction of Vehicle Code section 2800.2, disregard for safety, which is not a violent felony,
9. and, therefore, this inmate is not subject to the fifteen percent credit limit of Penal Code section
10. 2933.1. (Id.)  The fourth inmate's LSS indicates that his controlling case was a second degree
11. burglary conviction, in violation of Penal Code section 459. Contrary to Petitioner's assertion
12. otherwise, because that offense is not listed in Penal code section 667(c), the fourth inmate is not
13. subject to the fifteen-percent credit limitation in Penal Code section 2933.1. (Id.)  Finally, the
14. fifth inmate's controlling case involves convictions for Penal Code section 667(c), assault with a
15. deadly weapon, and Vehicle Code section 2800.2, disregard for safety. Neither of these offenses
16. is listed in Penal Code section 667.5(c), and therefore section 2933.1 does not limit this inmate's
17. credit earning ability. (Id.)  Further, although each of the five LSS's for the above inmates
18. reference Penal Code section 2934 with the phrase "CREDITS AUTO RE-VESTED PER PC
19. 2934" that notation is merely an indication that these inmates are eligible for the two-for-one
20. credits. (Id.)

21.     In this instant case, Petitioner's Credit Code is "4" because his controlling offense is a
22. conviction for violating Penal Code section 12022.7(e), which is listed as a violent felony in
23. Penal Code section 667.5, subdivision (c)(8), and Petitioner is therefore limited to no more than
24. fifteen percent credit off of his sentence. (Exhibit 1; Exhibit 2, ¶¶ 10-14, Attachment B
25. [Petitioner's Legal Status Summary], attached to Answer.)

26.     Finally, Petitioner's reliance on In re Monigold, 205 Cal.App.3d 1224 (1988), in support
27. of his claim that CDCR is prohibited under equitable estoppel principles from denying him day-
28. for-day credits, is misplaced. In Monigold, the petitioner was serving an indeterminate term of

8

15 years to life for second degree murder.  The California Department of Correction erroneously allowed him to earn day-for-day worktime credits pursuant to section 2933 and a waiver was signed.  Petitioner's minimum eligible parole date was recalculated and reflected a cut of 26 months.  In re Monigold, 205 Cal.App.3d at 1226.  In April 1987, after earning day-for-day worktime credits for four years, the Attorney General informed the CDC that it erred in allowing the petitioner to participate in the worktime credit program, given the Attorney's General's March 1987, conclusion that state prisoners serving indeterminate sentences of 15 years to life were ineligible for worktime credits under section 2933.  As a result, the petitioner's worktime credits were revoked and a new minimum eligibility parole date was recalculated.  Id. at 1226-1227.  Based on principles of equitable estoppel, the Court of Appeal, held that the state was estopped from revoking the petitioner's earned credits because he worked under that program in good faith and in reliance on his early release date for four years.  Id. at 1230-1231.  In contrast, here, the CDCR never informed Petitioner that he was eligible for worktime credits under section 2933.  In fact, when Petitioner attempted to present a "waiver" to the CDCR, it was refused.  (Petition, Attachment, at 7.)  Thus, any belief that Petitioner was entitled to earn day-for-day worktime credits was based on his own misinterpretation of the statutory scheme, and not on the CDCR's acceptance into the program. In sum, the CDCR was statutorily unauthorized to contract with Petitioner for day-for-day credits, and Petitioner was never informed to the contrary.

D.     Due Process Violation

To the extent Petitioner contends that his due process rights have been violated because he has a liberty interest in earning "halftime" credits pursuant to California Penal Code § 2933 because he has participated in the IWTIP program, his claim is without merit.

In order to state a due process claim, Petitioner must show that a constitutionally protected liberty interest is implicated.  Baumann v. Arizona Dept. of Corrections, 754 F.2d 841, 844 (9th Cir. 1985).  A state may create a constitutionally protected liberty interest if it establishes regulatory measures that impose substantive limitations on the exercise of official discretion.  Hewitt v. Helms, 459 U.S. 460, 470-71 (1983).  Contrary to Petitioner's assumption, California has not created a protected liberty interest in earning credits pursuant to Section 2933.

See California Penal Code § 2933 ("[w]orktime credit is a privilege, not a right"); Kalka v. Vasquez, 867 F.2d 546, 547 (9th Cir.1989) ("section 2933 does not create a constitutionally protected liberty interest"); Touissant v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir.1986) ("[e]xamination of section 2933 leads to the conclusion that prisoners have no right to earn the one-for-one worktime credits provided by that section).  In addition, Section 2934, which provides for waivers, cannot serve as the basis of a liberty interest in work credits.  Miller v. Rowland, 999 F.2d 389, 392 (9th Cir. 1993).  Petitioner simply has no constitutional right to earn credits.  Because Petitioner has not shown a violation of the Federal Constitution, Petitioner is not entitled to habeas corpus relief.  See 28 U.S.C. § 2254 (habeas corpus available for violations of the Constitution or federal law.)

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 8, 2007**          **/s/ Dennis L. Beck**
3b142a                    UNITED STATES MAGISTRATE JUDGE